*211 The opinion of the Court was delivered by
Munro, J.
By the 4th Section of the Act of Congress of 1789, 1 S. L. U. S., page 33, the passing of laws for the regulation of all pilots of the harbors and ports of the United States, is committed to the States respectively. This State has entrusted that duty to the City of Charleston so far as pertains to her own harbor, and who assumed and has discharged the trust from the date of her charter until now: Samuel Chapman, the appellee, is admitted to be, a pilot for the said bar and harbor duly appointed and licensed according to the ordinances of the city. He offered his services as pilot outside the bar to the appellant, who was in command of a steamship then about to enter the port. Appellant declined to receive the said services upon the ground that he had on board his ship, a pilot duly licensed under the Act of Congress of 1852, entitled “ an Act to amend the Act which provides for the better security of the lives of passengers on board vessels propelled in whole or in part by steam, and for other purposes.” It is not denied, that under the ordinances of the City of Charleston, upon the tender and refusal of the pilot’s services, the appellant became liable to pay the usual pilotage fee in such case, unless the Act of Congress of 1789, which commits to the States the regulation of the pilots for harbors and ports, is repealed or modified by the Act of 1852. But the appellant insists that the Act of 1789 is in part repealed by the Act of 1852, that Congress thereby resumed and committed to certain inspectors, named in the said Act, the power of appointing pilots for vessels propelled by steam, who, as to such vessels, supersede the pilots appointed by the States respectively for their harbors and ports. The Act of 1789 is not expressly repealed by that of 1852, nor is it therein so expressly or plainly referred to, either by its date or subject matter, as to satisfy the Court that its subject was at all in the contemplation of Congress when the Act of 1852 was passed. If it were clear that both Acts refer to the same subject, and *212 that Congress by the Act of 1852 intended to remedy mischiefs which had sprung up in the system of pilotage for ports and harbors as regulated by the States, then the Act of 1852 would be held to repeal or modify that of 1789, so far as the two are inconsistent with each other. But the general purposes of the two'Acts are not the same, nor does it appear to the Court that any of their provisions are inconsistent with each other. The Act of 1789, is confined specially to conferring upon the States authority to regulate the pilots of their respective harbors, whilst the Act of 1852 was intended to remedy numerous defects in the boilers, engine, and the management of steamers, whereby the lives of passengers were endangered. After providing for additional pumps, life-boats, safety-valves,, plugs and other improvements in the machinery, the Act of 1852, further requires, that there shall be employed upon every such vessel, an engineer and pilot, who shall be licensed according to the provisions of the said Act. It further declares, that “ it shall be unlawful for any person to employ, or any person to serve as engineer or pilot, on any such vessel who is not so licensed.” Did Congress intend here to use the term pilot in such sense as to supersede the pilot of the ports and harbors ? or was it the intention only to provide a skilful licensed pilot who should guide such vessel upon the voyage after leaving port ? The mere requiring a pilot for such vessel does not necessarily imply that Congress intended to supersede the pilots of the harbor; for according to Mr. Abbot, the name “pilot,” is applied, either to a particular officer serving on board a ship during a voyage, and having charge of the helm and of the ship’s course; or to a person taken on board at a particular place, for the purpose of conducting the ship through a road or channel, or from, or into port. The term then being applicable to two distinct offices, any provision for the one, does not necessarily imply an interference with the other. So that the provision of the A.ct of 1852, for licensing pilots for steamers, and requiring them to have such pilots on board *213 during the voyage, may still' be so construed as not to dispense with the necessity of taking a harbor pilot on entering and leaving port. Upon close examination of the Act, we have no doubt of this being its true construction. It does not require that the pilots who may be licensed under it shall be examined touching their knowledge of the roads, channels, or ports into which the vessel is to be piloted; it does not even require that the inspectors who are to license such pilpts, shall have any knowledge of the channels, ports and harbors which such vessels are to enter. It does not confine the license to any one or more particular channels or harbors, but for aught that appears in the Act to the contrary, the inspectors in Charleston, or in New York, may license a pilot of such vessel for the whole Atlantic and Gulf coast. If such pilot is to supersede the harbor pilot on entering port, his license may authorize, nay, even compel him under the penalty of the Act to take his vessel into a port which he may never before have entered, and of the entrance to which he may know nothing at all. The Court cannot suppose, that in an Act to provide for the better security of the lives of passengers, such points as these could have escaped the attention of Congress, if it had been the intention of that body to provide a system of pilotage for such vessels, which was to dispense with the service of the harbor pilots. The latter, by the regulation of the respective States, are required to undergo a searching examination, touching their knowledge of the harbor, before they can receive license as pilots of the same ; they are also required to remain constantly at their respective ports, so that they may. be ever ready and practiced, and may have constant observation of the shoals and obstructions of the channel, and state of the tides, and be fully fitted for their difficult duties. It would not be reasonable without an express enactment to that effect, to suppose that Congress would supersede the pilots appointed with such care, and so constantly practised in their particular duty, and commit *214 their office to pilots appointed with no more guards than are required by the Act of 1852.
The Court is therefore of opinion, that the Act merely intended to provide for a shilled licensed pilot for steamers for the course of their voyage, but that on leaving or entering ports, such pilots must give way to the pilots of the port.
The motion for a new trial is therefore refused.
O’Neall, Wardlaw, Withers and Whither, JJ., concurred.

Motion refused.